Warner, J.
This is a proceeding by the plaintiff to assess compensation for a right-of-way across the public landing, in the city of Cincinnati, sought to be appropriated by plaintiff company, and has now been submitted upon questions arising upon the preliminary hearing.
This proceeding is brought under favor of the act of the General Assembly, found in Volume 99, page 590, Ohio Laws, known as Section 3283a of 'the Revised Statutes, and is as follows:
Section 3283a. “If it be necessary in the judgment of the board of directors of any domestic or foreign corporation owning or operating a railroad wholly or partly within the state of Ohio, to use and occupy for an elevated track any portion of any public ground lying within the limits of any municipality and dedicated to the public for use as a public ground, common, landing or wharf or for any other public purpose, excepting all streets, avenues, alleys, or public road, such company may appropriate an easement over so much of such ground as may be necessary for such purpose, including the right to maintain the necessary piers and supports for said elevated track; but such appropriation shall be limited to such an easement as is necessary for the construction, maintenance and uses of such elevated track, in accordance with' the plans hereinafter provided for. Proceedings for such appropriation shall be conducted in the manner provided in title II, chapter 8, part 3 of the Revised Statutes, so far as the same may be applicable thereto, but before any appropriation may be made hereunder there must be submitted to the council of the municipality general plans of the proposed structure showing the manner, character and location of all supports, any part which will be upon such public ground, common, landing or wharf, and showing the vertical and longitudinal clearenees between the supports; and no right to appropriate shall accrue to the railroad company until after said .company, and the council shall have agreed upoñ the manner, terms, and conditions upon which the property may be used or occupied and the plans submitted shall have been approved by *651 ordinance duly passed by a two-thirds vote of council; but that such appropriation shall not be restrictive of the control by the public officers or authorities over such public ground, common, landing or wharf, subject to the continued maintenance and use of such elevated track upon the terms and conditions agreed upon, and such ordinance shall be read on three separate days and the rules requiring such reading shall not be suspended.”
Upon compliance -by the expropriator with the preliminary steps required by this section, it would be entitled to proceed with the appropriation as indicated therein. It is provided in said section that:
“Proceedings for such appropriation shall be conducted in the manner provided in title II, chapter 8, part 3 of the Revised Statutes, so far as the same may be applicable thereto.”
This provision clearly indicates that the procedure must be according to chapter 8, as far as applicable to the peculiar character of this proceeding. An essential part of said procedure is the preliminary hearing upon jurisdictional questions under Section 6420 of the Revised Statutes, so far as the same may be found applicable herein. Under the provisions of this latter section “any interested person shall be heard” upon the hearing of such jurisdictional questions.
The city of Cincinnati, by its solicitor, and others made parties hereto as unknown defendants have appeared and filed formal objections to this proceeding and to its further prosecution. These objections have been presented in the form of pleadings, and a motion to dismiss on the part of said city, in order that the same might clearly appear in the record. As an appropriation proceeding is a special proceeding and not a civil action, it is not necessary that the allegations of the petition, or the questions to be determined on the preliminary hearing, be put in issue by any pleading. The jurisdictional questions on this hearing are conditions precedent prescribed by law to be determined favorably to the expropriator before the assessment of compensation can proceed. Railroad v. Todd, 72 O. S., 166.
This opinion will not undertake a discussion of all the claims and objections formally made by the parties, but will be restricted *652 •to such as are thought to be vital and decisive of the present contentions.
The jurisdiction of this court to hear and determine the matters involved in this proceeding is denied on the ground that the property sought to be taken is already dedicated to public use, and that said chapter 8 relates only to procedure for the appropriation of private property. If this contention were sound, there is no court in this state authorized by law to entertain proceedings by private corporations to appropriate public property. As it is conceded that this court has concurrent jurisdiction with the probate court in all cases of appropriation, it follows that if the probate court has jurisdiction in this proceeding, then this court has a like authority.
Section 6416, Revised Statutes, contained in said chapter S, directs that the petition for appropriation be filed with the probate judge. As the filing of the petition is a part of the procedure in that chapter certainly applicable to this case, the naming of the probate judge as the court to receive the same clearly confers jurisdiction in the premises. Section 524, Revised Statutes, item 7, also confers jurisdiction in appropriation proceedings on the probate court in terms broad enough to cover this proceeding.
It is further contended that the petition is defective in the following particulars:
“a. In failing to plead charter powers of plaintiff to do in the state of its creation what it here seeks to do.
“b. In failing to plead that the property sought to be appropriated is required for its own railroad.
“c. In failing to plead that the property sought to be appropriated is required in the locations of plaintiff’s chartered railroad.
“d. In failing to plead an ordinance showing the terms and conditions upon which the right of appropriation is to accrue, and the use to be maintained as required by the legislative act on which the proceeding is founded.
“e. In failing to plead such an easement and use to be appropriated as contemplated by the legislative act on which the proceeding is founded.”
These contentions can not be sustained. Section 6416, Revised Statutes, prescribes what the petition for appropriation *653 shall contain, to which must be added such allegations- as may be necessary under Section 3283a of the law authorizing this appropriation.
The petition in this case has been carefully drawn, fully cover-ing all such necessary matters.
It is also claimed said Section 3283a is invalid as an infraction of certain provisions of the Constitution of this state and, of the Constitution of the United States. The same contention was made in a suit brought in the court of common pleas of this county by the city of Cincinnati against .the L. & N. Railroad Co., the purpose of which was to permanently enjoin the further prosecution' of this appropriation proceeding in this court, in which case said Section 3283a was held to be constitutional, upon allegations denying the fact, by said court of common pleas and this decision was affirmed by the circuit court and by the Supreme Court without report. Cincinnati v. L. & N. Railroad Co., 82 O. S., 466.
The constitutionality of said section therefore is not now an open question in this proceeding. The vital and controlling questions in this proceeding on this hearing relate to the scope thereof and the law applicable thereto. It is contended on behalf of the expropriator that the jurisdictional questions involved herein are such only as arise under and are prescribed by said Section 3283a, and it is asserted that the specific questions- enumerated in said Section 6420 are not applicable to this proceeding, as they have to do with the extent of the .power of the corporation to make the appropriation and not with the procedure. Counsel for the company classify the preliminary questions as follows.:
“1. The existence of the Lousiville & Nashville Railroad Co. and that it is of the class authorized by Section 3283a to make the appropriation.
“2. That the property sought to be acquired is such a condemnation under Section 3283a. That is to say, it is an easement over public ground lying within the limits of a municipality and dedicated to the public for use as a public ground, landing or wharf or for any other public purpose except for streets.
“3. That the property sought to be appropriated is for a public use.
“4. That in the judgment of the board of directors of the Louisville & Nashville Railroad Co. the appropriation is necessary.
*654 “5. That general plans of the proposed structure showing the manner, character and location of all supports, etc., have been submitted to the municipal council and that the council has approved and agreed to the occupancy and the use of the property for the purpose’and in the manner proposed.”
And it is asserted that if the court should answer these questions in the affirmative, the right of the company to proceed with the appropriation is complete, and that the only ground upon which the right of the company to proceed can be rightfully denied is that said Section 3283a is unconstitutional, or that there has been an abuse by the company, or by the council of sáid city, of the discretion lodged in them by said Section 3283a. It is contended on the part of counsel for the city that the jurisdictional questions to be determined are those specified in Section 6420 of the Revised Statutes, which is as follows:
“Sec. 6420. On the day named in any summons first served, or publication first completed, the probate judge shall hear and determine the questions of the existence of the corporation, its right to make the appropriation, its inability to agree with the owner, and the necessity for the appropriation. Upon these questions the burden of proof shall be upon the corporation, and any interested person shall be heard.”
As before stated said Section 3283a declares in terms that the procedure provided in said chapter 8 so far as applicable shall apply to this case and further provides that “before any appropriation may be made hereunder” certain specific conditions must be fulfilled. This section in general terms grants certain rights and privileges upon certain conditions, and when such conditions have been complied with permits the appropriation to proceed in the manner prescribed in said chapter 8 so far as applicable. This section therefore is not one of procedure as to.the appropriations, for it distinctly points out another statute under which “such appropriation shall be conducted.” Of course, the performance of all the conditions precedent set forth in said section to be performed before this proceeding is instituted must be strictly shown, but in its essence this section simply declares the basic conditional privileges intended to be conferred upon corporations coming within its terms. The contention of *655 counsel that the abuse by the company of this corporate power would defeat its right to proceed, practically admits the pertinency of at least a part of Section 6420 on this hearing, for the right to make the appropriation involves the question of abuse. It is apparent also that the preliminary questions as classified by counsel for the company are included in the classification of Section 6420 when properly considered. If said Section 6420, therefore, is applicable to this proceeding in whole, or in part, it must control to the extent it may be found to apply. It will of course be conceded that the existence of the corporation is an-essential jurisdictional fact clearly applicable to this proceeding. Its right to make the appropriation is also necessarily applicable. Is the inability of the corporation to agree with the owner a jurisdictional fact to be found affirmatively by the court before -the appropriation can proceed? I think it is. But in view of the character of the ownership of the public landing is any attempt -on the part of the expropriator to agree with the owner necessary? I think not. The legal title to the public landing is in the city of Cincinnati in trust for the inhabitants thereof for the purposes to which it has been dedicated. The purpose and intent of the provision under consideration is to give the owner an opportunity to sell his property to the corporation and thus save him the trouble and cost incident to appropriation proceedings should an agreement be reached. But the owner must be competent to contract and convey, otherwise inability to agree clearly exists within the meaning of said Section 6420.
In the case of the L. & N. Railroad Company v. Cincinnati, 76 O. S., 481, the Supreme Court held that there was no statute at that time to “authorize a municipality to grant to a railroad company the right to occupy a public common or landing with an elevated railroad structure.” Said Section 3283a passed since that decision does not authorize such a grant. It becomes apparent therefore that this holding of the Supreme Court has not been superseded by any subsequent act of the General Assembly, and that the city of Cincinnati is without authority to grant the easement sought to be appropriated herein. So far as the heirs of the original dedicators are concerned their individual *656 revertionary interests appear to be unknown because the number of heirs and the degree of relationship is unknown. To require the corporation to attempt to agree with any one of them who may be known under such circumstances, would be to compel it to seek to contract for an unknown interest,' Which is clearly not the intent of this provision, .besides being unfair and unreasonable in the extreme. Section 6415, Revised Statutes, excuses any attempt to agree when the owner is unknown.
The next and last jurisdictional fact required-to be found under said Section 6420 is the necessity for the appropriation. Is this applicable to a case of this character ? The - contention of the company in brief is, that the necessity for the appropriation is not a judicial question at all, but political, and the Legislature having authorized the board of directors of the company to declare as to the necessity, the conclusion of the board is final and conclusive upon the court unless there has been an abuse of the power vested in it.
Lewis, in his excellent work on Eminent Domain, third edition, last' clause of Section 370, after stating the general rule as claimed by the company, adds this exception thereto: “Sometimes the Constitution or statute requires the question of necessity to be determined as a judicial question.” And under Section 598, referring to the case where the statute requires the necessity for taking property to be passed upon by a particular tribunal, he says: “In such cases it is imperative that the necessity shall be ascertained as required'by law.” That said Section 6420, distinctly and clearly places the necessity for the appropriation in the category of judicial questions is apparent. This section was first incorporated into the law of this state in 1872 (69 O. L., 88). Previous to this in 1854 in the case of Giesy v. The Railroad Company, 4 O. S., 308, Ranney, J., had held the necessity for the appropriation to be a political rather than a judicial question. That the General Assembly could make such necessity a judicial question is not open to dispute. The attention of the court in this connection has been called to the opinion of the Supreme Court in the case of Bridge Company v. Magruder, 63 O. S., 476, where Davis, J., upon the question of necessity says, “beyond the question whether the proposed tak *657 ing is a public use or not, the necessity of the appropriation is not a judicial question, ’ ’ citing the Giesy case, supra, and making no reference to the statute of 1872. This omission would seem to essentially weaken, if not destroy, the value of the opinion in this particular. But in Railroad Company v. Railroad Company, 72 O. S., 368, the Supreme Court has determined the matter in favor of the proposition that the necessity for the appropriation is a judicial question, in holding that:
“While a corporation has primary discretion in determining what land is necessary for the purpose for which it is authorized to make appropriations, the probate judge has, under the jurisdiction vested in him by Section 6420, Revised Statutes, to hear and determine the question of the right of the corporation to make the appropriation and. the necessity for the appropriation, power to prevent abuse in its exercise, and if upon such hearing he determines that the appropriation by the corporation will be an abuse of its corporate power or destructive of the public use to which the land is already devoted he may dismiss the petition. ’ ’
While this decision is sufficient to determine the question now being discussed it logically follows that if the necessity for the appropriation is a judicial question at all, it must be so in all particulars affecting the necessity, because the statute is broad, comprehensive and concise in the terms used. This case also determines that the discretion vested by law in the corporation as to the necessity for the appropriation is simply a “primary discretion” and not one conclusive upon the court.
Coming now to a consideration of the evidence submitted on this hearing, I am satisfied that all the conditions precedent to the institution of this proceeding required by said Section 3283a have been strictly observed and performed, and that the existence of the plaintiff corporation and its character as coming within the terms of said section has been established. It is not necessary to refer to or discuss these points in detail. There is no dispute that the easement sought is for a public use. The contentions concerning the right to make this appropriation and the necessity therefor present the important questions upon the evidence in the case. There are certain established legal principles that must be considered upon this branch of the contro *658 versy. In' general the power of the Legislature is supreme in questions of appropriation except as restricted by the Constitution. The Constitution of this state contains no limitation upon the power of the General Assembly in regard to the appropria-tion of property already devoted to public use,, and when the right to appropriate such property is given in express and specific terms the courts must give effect to the statutory requirement. Lewis on Eminent Domain, 3d Edition, Section 440, and cases there cited.
But when as in the case at bar authority is given in general terms it must be shown that there is a reasonable necessity for the taking and that the prior public use is not seriously crippled or impeded. Lewis in said section states the matter as follows:
“Two conditions must concur in order to authorize such taking. There must be some necessity therefor on the part of the condemnor, and the taking must not destroy or seriously impede the use to which the property is already devoted. As to the character of the necessity which must exist there is, as might be expected, considerable difference of opinion. Some courts have held that the necessity must be an absolute one, but the better opinion is that it must be a reasonable one. "Whether any general rule can be laid down as to what will constitute a reasonable necessity may be doubtful, but we should say that there was a reasonable necessity for the taking where the public interests would be better subserved thereby or where the advantages to the condemnor will largely exceed the disadvantages to the condemnee.”
As said Section 3283a is couched in general terms as to what may be appropriated, to sustain this proceeding the evidence must show a reasonable necessity for the appropriation desired and that the taking will not destroy or seriously impede the use to which the property is already devoted. Both propositions, the reasonable necessity, and the absence of serious impediment to the present use, must be shown to exist. Failure to substantiate either will defeat the appropriation. ' The burden of proof is upon the corporation in these particulars. The evidence plainly discloses the fact that there are admittedly other practical routes that might be adopted by the corporation (evi *659 dence of Courtney on cross-examination, page 208). It is also established, I think, by the evidence that the route across the public landing is the shortest, cheapest, and of slightly better grades and curves than any other to reach the destination desired. Any conditions created by the acts of the railroad company showing necessity may not be considered as bearing upon the situation. Were this a case, however, involving private property only where compensation usually indemnifies the owner, and in which .class of cases the courts rarely interfere with the expressed judgment of the corporation as to the location of its route I should think upon the evidence that the right and necessity of the appropriation had been sufficiently shown. The property, however, involved in this case being public property other considerations must be given due weight and force, and the rule indicated in Lewis on Eminent Domain as quoted and adopted by courts in many jurisdictions, must be applied. Will the proposed use destroy or seriously impede the purposes to which the public landing has been dedicated and is now used? If the structure that the railroad company proposes to place across the public landing would destroy in large part the present use thereof or manifestly curtail and unreasonably restrict such present use it would be an abuse of its corporate power, for the corporation must be presumed to know the results that naturally follow its proposed action. Bad faith on the part of the railroad company or the city council has not been shown. Abuse of the “primary discretion” vested in the railroad company may be predicated alone upon the natural results that, follow its proposed use of the property sought to be appropriated. In the determination of such cases as the one at bar the words of Holmes, J., in East Hampton v. County Commissioners, 154 Mass., 424, appropriately express the situation:
“We must consider the relative importance and the interests of the two uses generically, the extent of the harm to be done to present uses, any light that history may show, and make up our mind under all the circumstances as best we can. ’ ’
It appears that the public landing extends about one thousand feet along the Ohio river, including Broadway, Sycamore and Main streets extended to the river and reaches back to the *660 south line of Front street. It is the only public landing within the city limits. The grade of the landing back to Front street from the river is very great, especially so on the eastern half thereof, and for the entire length thereof is such as to be entirely prohibitive of vehicular traffic straight up and down between Front street and the river. The result is that such traffic must take a diagonal course to and from the river. Obviously the longer the diagonal route the better and easier the grade and greater the advantage to the haul to and from the river. The proposed viaduct runs from a point 21% feet south of the south line of Front street on the eastern side of the landing to Water street on the western side thereof substantially in a diagonal course toward the river. The spans in this viaduct for passage thereunder at grade of the landing east of Sycamore street extended are each 23 feet 8 inches horizontal clearance. Opposite Sycamore street is a span 49 feet 2 inches horizontal clearance. About 150 feet further west from said last mentioned span is another span 49 feet 2 inches horizontal clearance. All the other spans west of Sycamore street extended are either 23 feet 8 inches, or 22 feet 11 inches horizontal clearance.
The viaduct is 15 feet in width the entire distance. To pass through the longer span opposite Sycamore street in about the center of the landing would materially shorten the diagonal courses thereto from both east and west and render the use of it difficult. It is obvious that vehicular traffic to and from the river would find it impossible to pass through any of the spans except the two largest ones, to which reference has already been made, without taking a straight up and down course on the landing, which the grade of the landing prohibits. The result is that the landing would be practically blocked of all use as a terminal for river traffic except as to the two longest spans of the proposed viaduct of about 50 feet each. Does this result seriously impede the use of the public landing for the purpose to which it has been dedicated and unreasonably curtail and restrict such use? I think it does. In fact the grades of the public landing are such that any viaduct' across it would seriously impede its use for the river traffic. The dams now com *661 pleted and those being constructed in the river to make it continuously navigable the year round will doubtless largely increase the traffic thereon and make the public landing at its best barely adequate to the demands that may be put upon it. To cripple its use even in a small degree under these circumstances would be serious and unreasonable. If it should be desired to elevate the traffic to the level of Front street by machinery, with proper structures for that purpose, a viaduct would doubtless be an insurmountable obstacle thereto.
Upon the entire situation I think the petition must be dismissed.